**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JOAHN BARRON FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-00067-JKB |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS INC., et al., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANTS EQUIFAX INC.'S AND EQUIFAX INFORMATION SERVICES LLC'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND BRIEF IN SUPPORT OF THE MOTION**

Nathan Daniel Adler, Esq.
Bar No: 22645
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202-3201
(410) 332-8516
(410) 332-8517 – Fax
nda@nqgrg.com

*Counsel for Equifax Inc. and Equifax Information
Services, LLC*

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................................1

STANDARD OF REVIEW .............................................................................................1

ARGUMENT ...................................................................................................................3

I.    **Equifax Inc. Is Not a Consumer Reporting Agency**.............................................3

II.   **Ms. Frazier's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.**..................................................................................11

     A.    "Consumer file" is defined as the information contained in a consumer's credit report/disclosure. ..................................................................................11

     B.    Plaintiff admits she received a copy of her credit report/disclosure from Equifax.......................................................................................................12

     C.    Ms. Frazier provides no factual basis for her assertion that the "credit report" she received was not her "full consumer file disclosure." .........................13

    **CONCLUSION** .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Rice*,
  40 F.3d 72 (4th Cir. 1994) ...................................................................2

*Allen v. Dackman*,
  991 A.2d 1216 (2010) ........................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................1, 2, 14

*Baltimore Line Handling Co. v. Brophy*,
  771 F. Supp. 2d 531 (D. Md. 2011) .......................................................7

*Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.*,
  340 A.2d 225 (1975) .......................................................................7, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................14

*Cancun Adventure Tours, Inc. v. Underwater Designer Co.*,
  862 F.2d 1044 (4th Cir. 1988) ...........................................................6, 7

*Channing v. Equifax, Inc., .,*
  No. 5:11-CV-293-FL, 2013 WL 593942 (E.D.N.C. Feb. 15, 2013)..............5, 6, 11

*Cochran v. Morris*,
  73 F.3d 1310 (4th Cir. 1996) ...............................................................2

*Davidson v. Sarnova, Inc.*,
  No. CV JKB-17-1067, 2017 WL 5564654 (D. Md. Nov. 20, 2017) ...................14

*DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*,
  540 F.2d 681 (4th Cir. 1976) ...............................................................8

*Dixon v. Process Corp.*,
  382 A.2d 893 (1978) ..........................................................................8

*Doe v. Salisbury Univ.*,
  123 F. Supp. 3d 748, 768 (D. Md. 2015) .............................................14, 15

*Frihat v. Citimortgage, Inc.*,
  No. 07-CV-946, Doc. 60 (W.D. Mo. Dec. 1, 2009) ..................................5, 11

*Greear v. Equifax, Inc.*,
No. 13-11896, 2014 WL 1378777 (E.D. Mich. Apr. 8, 2014) ......................................4, 5, 11

*Hildreth v. Tidewater Equipment Co., Inc.*,
838 A.2d 1204 (2003) ................................................................................................7, 8, 9

*Hinton v. Trans Union, LLC*,
654 F. Supp. 2d 440 (E.D. Va. 2009) ...................................................................................2

*Jackson v. Warning*,
No. CV PJM 15-1233, 2016 WL 7228866 (D. Md. Dec. 13, 2016)........................................2

*Johnson v. Flowers Indus., Inc.*,
814 F.2d 978 (4th Cir. 1987) ...........................................................................................6, 7

*Johnson v. MV Transp. Inc.*,
716 F. Supp. 2d 410 (D. Md. 2010) .....................................................................................2

*Jones v. Duncan*,
No. 1:09CV370-MU-02, 2009 WL 3230559 (W.D.N.C. Oct. 2, 2009)...................................2

*Kant v. Bregman, Berbert & Schwartz, L.L.C.*,
84 F. App'x 355 (4th Cir. 2004) ..........................................................................................2

*Malibu Media, LLC v. Doe*,
No. PWG-13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ............................................14

*Mason v. Potter*,
81 F. App'x 767 (4th Cir. 2003) ..........................................................................................2

*McDonald v. Equifax, Inc. et al.*,
Civil Action No. 3:15-cv-3212-B (N.D. Tex. Mar. 6, 2017)............................................5, 11

*Moran v. The Screening Pros, LLC*,
9th Cir. Cause No. 12-57246 10/4/13, Dkt. 22 .....................................................................12

*Persson v. Equifax Inc.*,
No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002).......................................................5, 11

*Pettway v. Equifax Info. Servs., LLC*,
No. CIV.A. 08-0618-KD-M, 2010 WL 653708 (S.D. Ala. Feb. 17, 2010)............................13

*RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*,
640 F. Supp. 2d 660 (D. Md. 2009). Application of the...................................................9, 10

*Ramlall v. Mobile Pro Corp.*,
30 A.3d 1003 (2011) ............................................................................................................8

*Ransom v. Equifax Inc.*,
  No. 09-80280-CIV, 2010 WL 1258084 (S.D. Fla. Mar. 30, 2010) ....................................5, 11

*Rosen v. Kore Holdings, Inc. (In re Rood)*,
  448 B.R. 149 (D. Md. 2011) ........................................................................................9, 10

*Serio v. Baystate Props., LLC*,
  60 A.3d 475 (2013) ..............................................................................................................8

*Slice v. Choicedata Consumer Servs., Inc.*,
  No. 3:04-CV-428, 2005 WL 2030690 (E.D. Tenn. Aug. 23, 2005) ...................................5, 11

*Southern Management Corp. v. Taha*,
  836 A.2d 627 (2003) ............................................................................................................6

*United States v. Wilson*,
  699 F.3d 789 (4th Cir. 2012) ...............................................................................................2

*Wantz v. Experian Info. Solutions*,
  386 F.3d 829 (7th Cir. 2004) .............................................................................................13

*Weiler v. Equifax Inc.*,
  No. 2:99-CV-936, Doc. 29 (W.D. Pa. Nov. 16, 2000) ......................................................5, 11

*Whitmore v. Hawkins*,
  217 F.3d 8463 (4th Cir. 2000) .............................................................................................8

*Wilshire Credit Corp. v. Karlin*,
  988 F. Supp. 570 (D. Md. 1997) .........................................................................................10

**Statutes**

Consumer Financial Protection Act of 2010 ...............................................................................12

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ........................................................ *passim*

15 U.S.C. § 1681a ......................................................................................................................3

15 U.S.C § 1681g ............................................................................................................. *passim*

15 U.S.C. § 1681n ......................................................................................................................4

Md. Code (2014 Repl. Vol., 2016 Supp.) ...................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... *passim*

"40 Years of Experience with the Fair Credit Reporting Act – An FTC Staff
Report with Summary of Interpretations" ("40 Years Commentary")
(available at https://www.ftc.gov/sites/default/files/documents/reports/40-
years-experience-fair-credit-reporting-act-ftc-staff-report-summary-
interpretations/110720fcrareport.pdf) ..................................................................................12

Defendants Equifax Inc. ("Equifax Inc.") and Equifax Information Services LLC ("EIS"), by Counsel, move the Court to dismiss Plaintiff Joahn Barron Frazier's First Amended Complaint for Violations of the FCRA ("FAC") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, the motion should be granted.

## INTRODUCTION

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. *Pro se* Plaintiff Joahn Barron Frazier filed her Original Complaint for Violations of the FCRA against Experian Information Solutions, Inc., Trans Union, LLC, and Equifax, Inc. (Doc. 1). Equifax Inc. filed a Motion to Dismiss her Original Complaint. (Doc. 11). In response, Ms. Frazier filed her FAC. (Doc. 15).

Equifax Inc. moves this Court to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) as it is not a consumer reporting agency; thus, it cannot be liable under the FCRA. EIS is a consumer reporting agency, and it is the party that responded to Ms. Frazier's two written requests. Equifax Inc. and EIS also jointly move to dismiss the FAC as Ms. Frazier fails to allege facts sufficient to support a claim for relief. She repeats the statutory language and offers merely speculative and conclusory allegations that she received a "credit report" when she requested a "full consumer file disclosure." Ms. Frazier's allegations do not adequately state a claim and fail to provide Equifax Inc. and EIS with adequate notice of the basis of the claims asserted against it. Accordingly, Ms. Frazier's FAC should be dismissed with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the

merits is more than a "sheer possibility." *Id.* The court must take the plaintiff's well-pled factual allegations as true. "The court need not, however, accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Johnson v. MV Transp. Inc.*, 716 F. Supp. 2d 410, 413 (D. Md. 2010) (citations omitted)

There must be "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, at 1949 (citing *Twombly*, 550 U.S. at 555); s*ee also Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009) (granting motion to dismiss 15 U.S.C § 1681g claim because allegations were merely "unadorned, the defendant-unlawfully-harmed-me accusations" (citation omitted)); *Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *9 (D. Md. Dec. 13, 2016) (dismissing *pro se* FCRA claims); *Kant v. Bregman, Berbert & Schwartz, L.L.C.*, 84 F. App'x 355 (4th Cir. 2004) (affirming dismissal of civil rights claim because plaintiff's only asserted conclusory allegations unsupported by any factual averments); *Mason v. Potter*, 81 F. App'x 767, 768 (4th Cir. 2003) (same); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (plaintiff cannot rely merely on conclusory allegations); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (must present more than naked allegations to survive dismissal); *Jones v. Duncan*, No. 1:09CV370-MU-02, 2009 WL 3230559, at *2 (W.D.N.C. Oct. 2, 2009) (dismissing case because plaintiff did not allege a single fact to overcome his showings that no violations occurred).

Although courts are obligated to liberally construe a *pro se* litigant's claims in applying the above analysis, this requirement "does not transform the court into an advocate." *United States v. Wilson,* 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted). The Fourth Circuit recognizes that "[w]hile *pro se* complaints may 'represent the work of an untutored hand

requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep 't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied,* 475 U.S. 1088 (1986)).

## ARGUMENT

### I.     Equifax Inc. Is Not a Consumer Reporting Agency.

A "consumer reporting agency" or "CRA" is defined by the FCRA, 15 U.S.C. § 1681a(f) as:

> any person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

The term "consumer report" is defined by 15 U.S.C. § 1681a(d) as:

> The term "consumer report" means any written, oral, or other communication of any information by a *consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance … . (Emphasis added.)

Therefore, in order to be held liable under the FCRA, a defendant must be a "consumer reporting agency" that prepared a "consumer report" concerning the plaintiff.

Ms. Frazier alleges that Equifax Inc. violated § 1681g of the FCRA. (Doc. 15 ¶ 58). Specifically, Ms. Frazier alleges she made two written requests to Equifax Inc. for her "full consumer file disclosure." (*Id.* ¶¶ 19, 25). Both letters are addressed ambiguously to "Equifax" without further appellation. (*See* Exhibit B, Doc. 1-3 at 1 (cited in Doc. 15 ¶ 19); Exhibit G, Doc. 1-8 at 1 (cited in Doc. 15 ¶ 25)). Ms. Frazier further alleges that in response to the first request, Equifax sent, and she received, a "letter which was not responsive to her request." (Doc. 15 ¶ 20).

Ms. Frazier's own exhibit confirms that EIS, not Equifax Inc., responded to her request. (S*ee* Exhibit C, Doc. 1-4 at 1 (cited in Doc. 15 ¶ 20)). In response to the second request, Ms. Frazier alleges that "Equifax Inc." sent, and she received, her "credit report." (Doc. 15 ¶ 28). However, Ms. Frazier did not attach a copy of her consumer disclosure; it would have revealed that it was provided by EIS, not Equifax Inc. Ms. Frazier seeks statutory damages of $1,000, attorney's fees and costs pursuant to § 1681n of the FCRA. (*Id.* ¶ 58). She does not allege or seek any actual damages. (*Id.*).

Because Equifax Inc. is not a consumer reporting agency; federal courts consistently dismiss Equifax Inc. in FCRA lawsuits filed by consumers based on allegations similar to those made by Ms. Frazier here. Federal courts consistently have held that, based on the plain language of the FCRA, plaintiffs cannot maintain FCRA claims against Equifax Inc., and that Equifax Inc. may not be held liable under the FCRA for actions taken by its subsidiaries. *See e.g.*, *Greear v. Equifax, Inc.*, No. 13-11896, 2014 WL 1378777, at *1 (E.D. Mich. Apr. 8, 2014) (dismissing plaintiff's claims because "Defendant Equifax, Inc., is not a consumer reporting agency subject to the requirements of the FCRA. Plaintiff cannot, as a matter of law, state a claim against Equifax, Inc., under the FCRA."). The District Court for the Eastern District of North Carolina stated as follows:

> ("[P]laintiff has simply sued the wrong party; . . . [Equifax Inc.,] which is incorporated and headquartered in Georgia, is a holding company with no source of income other than what it obtains from its ownership interests in subsidiaries and affiliates. It has not been in the business of assembling or evaluating consumer credit information since 1977. Thus, insofar as plaintiff has alleged a claim against defendant for violating the FCRA, summary judgment for defendant is appropriate where it is not a CRA and not subject to the requirements of the FCRA.

*Channing v. Equifax, Inc.*, ., ., No. 5:11-CV-293-FL, 2013 WL 593942, at * 2 (E.D.N.C. Feb. 15, 2013) (citations omitted.)

In *Slice v. Choicedata Consumer Servs., Inc.*, No. 3:04-CV-428, 2005 WL 2030690, at *3 (E.D. Tenn. Aug. 23, 2005), after considering the plain language of the FCRA and the undisputed Certification of Equifax Inc.'s employee, the court held that Equifax Inc. was not a "consumer reporting agency." 2005 WL 2030690, *3. The court explained that in order for a plaintiff to state a claim under the FCRA, a defendant must fall into one of three groups: (1) a consumer reporting agency; (2) a user of consumer reports; or (3) a furnisher of information to consumer reporting agencies. *Id.* The court dismissed Equifax Inc. holding that a violation of the provisions of the FCRA "necessarily must be committed by a "consumer reporting agency." *Id.* The Court also held that Equifax Inc. did not violate the FCRA because it is not a consumer reporting agency. *Id.*

The *Greear*, *Channing*, and *Slice* decisions are three in an unbroken line of decisions from district courts dismissing Equifax Inc. under circumstances similar to those presented here. *See Ransom v. Equifax Inc.*, No. 09-80280-CIV, 2010 WL 1258084, *3 (S.D. Fla. Mar. 30, 2010) (dismissing Equifax Inc. because "[b]ased on this record, the Court concludes, as a matter of law, that Equifax, Inc. has not violated the FCRA because it is not a consumer reporting agency and has not prepared a consumer report for [plaintiff].''); *Frihat v. Citimortgage, Inc.*, No. 07-CV-946, Doc. 60 at 4-5 (W.D. Mo. Dec. 1, 2009) (dismissing Equifax Inc. and citing cases for the proposition that "it [is] not a consumer reporting agency for purposes of the FCRA") (Attached hereto as Exhibit 1). *See also McDonald v. Equifax, Inc. et al.*, Civil Action No. 3:15-cv-3212-B (N.D. Tex. Mar. 6, 2017) (dismissing Equifax Inc.) (Attached hereto as Exhibit 2); *Persson v. Equifax Inc.*, No. 7:02-CV-511, Doc. 80 (W.D. Va. Oct. 28, 2002) (same) (Attached hereto as Exhibit 3); *Weiler v. Equifax Inc.*, No. 2:99-CV-936, Doc. 29 at 2-4 (W.D. Pa. Nov. 16, 2000) (same) (Attached hereto as Exhibit 4).

Despite the evidence that Ms. Frazier provided as exhibits to the Complaint clearly indicating that the communications were sent from EIS, she nevertheless alleges with no support that Equifax Inc. and its subsidiaries, such as EIS and Equifax Consumer Services, LLC, "transfer communications from consumers, as well as consumer information and data based on consumer information and communications," (Doc. 15 ¶ 8), "Equifax Inc. entities such as EIS regularly share FCRA restricted information with sibling[s]," (*Id.* ¶ 12). Ms. Frazier alleges that the Equifax entities have the same branding, labeling, and logo. (*Id.* ¶ 7, 9).

Ms. Frazier concedes that Equifax Inc. is a parent holding company of EIS. (*Id.* ¶ 6). Thus, it appears that Ms. Frazier is attempting to assert an argument that the corporate veil should be pierced. Such an argument should be rejected. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Channing*, 2013 WL 593942, at *3 (quoting *United States v.. Bestfoods,* 524 U.S. 51, 61 (1998) (quotations omitted)).

It is well settled that "[a] corporation exists as a legal entity separate and distinct from its corporate shareholders." *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988); *see Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987) . Notably, a corporation is a " 'creature of legal fiction,' " and " 'a corporation must of necessity act through its agents....' " *Southern Management Corp. v. Taha*, 836 A.2d 627, 638 (2003) (citations omitted). Similarly, under Maryland law, a member of a limited liability company ("LLC") is not "personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company." Md. Code (2014 Repl. Vol., 2016 Supp.), § 4A-301 of the Corporations & Associations

Article; *see Allen v. Dackman*, 991 A.2d 1216, 1228 (2010) ("[A] member of an LLC generally is not liable for torts committed by, or contractual obligations acquired by, the LLC.").

The concept of a corporation as a separate legal entity "is expressed by the colorful metaphor of the corporate veil, which presumes that acts of the corporation are not acts of the shareholder." *Johnson*, 814 F.2d at 980. The corporate veil doctrine "is a basic attribute of the corporate form; it encourages business investment and fosters stability in commercial transactions." *Cancun Adventure*, 862 F.2d at 1047. The same logic applies to a LLC.

In *Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.*, 340 A.2d 225, 234 (1975), the Maryland Court of Appeals observed that, in the absence of fraud or unless necessary to enforce a paramount equity, shareholders are generally not liable for the acts of a corporation. It said, *id.* at 310, 340 A.2d at 234:

> The most frequently enunciated rule in Maryland is that although courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.

A party may seek to pierce the corporate veil when " 'necessary to prevent fraud or enforce a paramount equity.' " *Hildreth v. Tidewater Equipment Co., Inc.*, 838 A.2d 1204, 1209 (2003) (citations omitted). But, in Maryland "the fiction of the wholly separate corporate form is jealously guarded...." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011). Indeed, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Residential Warranty Corp.*, 728 A.2d at 790-91; *accord Whitmore v. Hawkins*, 217 F.3d 8463 at *4 (4th Cir. 2000) (table).

Notably, the "[p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously,' " *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*, 540 F.2d 681, 683 (4th Cir.

1976) (citation omitted), and the challenge facing a party seeking to pierce the corporate veil has been described as "herculean." *Dixon v. Process Corp.*, 382 A.2d 893, 894-95 (1978) ("A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[ ] ... [W]oe unto the creditor who seeks to rip away the corporate façade...."). Indeed, to this Court's knowledge, no Maryland appellate court has issued a reported opinion allowing veil piercing to enforce a "paramount equity." *See Ramlall v. Mobile Pro Corp.*, 30 A.3d 1003, 1009 (2011). "This standard has been so narrowly construed that neither [the Maryland Court of Special Appeals] nor the [Maryland] Court of Appeals has ultimately 'found an equitable interest more important than the state's interest in limited shareholder liability.' " *Serio v. Baystate Props., LLC*, 60 A.3d 475, 484 (2013) (quoting *Residential Warranty*, 728 A.2d at 789 n.13). Even where a party seeks to hold a shareholder liable for conduct that was "clearly designed to cause the corporation to evade a legal obligation" and "had the effect of rendering [the corporation] 'all but insolvent,' " paramount equity does not justify piercing the veil. *Hildreth*, 838 A.2d at 1212-13 (quoting *Bart Arconti*, 340 A.2d at 231).

Only in the appropriate circumstances will courts "disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist." *Id.* There are three circumstances by which a corporate entity may be disregarded:

*First.* Where the corporation is used *as a mere shield for the perpetration of a fraud*, the courts will disregard the fiction of separate corporate entity.

*Second.* The courts may consider a corporation as unencumbered by the fiction of corporate entity and deal with substance rather than form as though the corporation did not exist, *in order to prevent evasion of legal obligations.*

*Third.* Where the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation, *fail to observe the corporate entity, operating*

> *the business or dealing with the corporation's property as if it were their own*, the
> courts will also disregard the corporate entity for the protection of third persons.

*Hildreth*, 838 A.2d at 1210 (quoting Herbert M. Brune, Jr., Maryland Corporation Law and
Practice, § 371 at 384 (revised ed. 1953)) (internal quotation marks omitted; emphasis in
original).

The third of these circumstances is commonly referred to as the "alter ego" doctrine.
*Rosen v. Kore Holdings, Inc. (In re Rood)*, 448 B.R. 149, 159 (D. Md. 2011) (citing *Hildreth*,
838 A.2d at 1210. This doctrine is applied " 'with great caution and reluctance' and only in
'exceptional circumstances.' " *Id.*; *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp.
2d 660, 669 (D. Md. 2009). Application of the alter ego doctrine is appropriate where there is a
showing of:

> (1) complete domination, not only of the finances, but of policy and business
> practice in respect to the transaction so that the corporate entity as to this
> transaction had at the time no separate mind, will or existence of its own[;]
>
> (2) that such control [was] used by the defendant to commit fraud or wrong, to
> perpetrate the violation of the statutory or other positive legal duty, or dishonest
> and unjust act in contravention of the plaintiff's legal rights [;] and
>
> (3) that such control and breach of duty proximately caused the injury or unjust
> loss.

> *Id.* (internal quotations omitted). Although there is "no universal rule as to the
> specific criteria that courts will consider in determining whether to apply the
> doctrine, ... some of the factors commonly considered" are:

> (1) whether the corporation is inadequately capitalized, fails to observe corporate
> formalities, fails to issue stock or pay dividends, or operates without a profit[;]
>
> (2) whether there is commingling of corporate and personal assets[;]
>
> (3) whether there are non-functioning officers or directors[;]
>
> (4) whether the corporation is insolvent at the time of the transaction [;] and
>
> (5) the absence of corporate records.

*Id.* (citations omitted).

The evaluation of alter ego liability is a fact-specific inquiry generally left to summary judgment. *RaceRedi Motorsports*, 640 F. Supp. 2d at 670 (citing *In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. 528, 551 (D. Md. 1996)). Maryland courts, "nonetheless, have dismissed alter ego claims under Rule 12(b)(6)." *Id.*

Dismissal of the alter ego claim is warranted here because, in Maryland, courts will not disregard the corporate entity absent a finding of fraud or to enforce a paramount equity. *Bart Arconti*, 340 A.2d at 234 (citing *Damazo,* 270 A.2d 814). Ms. Frazier has failed to allege that Equifax Inc. exercised complete domination over its subsidiaries so that they had no separate mind, will, or existence of their own. *See Wilshire Credit Corp. v. Karlin*, 988 F. Supp. 570, 573 (D. Md. 1997). Without any other suggestions that the alter ego was incorporated for fraudulent purpose, or inadequately capitalized, the Court should dismiss the claim. *RaceRedi Motorsports*, 640 F. Supp. 2d at 670 (citing *In re American Honda Motor*, 941 F. Supp. at 551)

Ms. Frazier's conclusory allegations are insufficient to sufficiently plead her alter ego claim as compared to the factors listed above that are considered under Maryland law. *See Rosen (In re Rood)*, 448 B.R. at 159. Ms. Frazier cannot save her claims against Equifax Inc. by creating a theory having no basis in reality. Ms. Frazier's allegations are not well-pled and therefore, should not be afforded any weight. Accordingly, the Court should dismiss Ms. Frazier's claims against Equifax Inc.

Dismissal is warranted here just as it was in *Greear*, *Channing*, *Slice*, *Ransom*, *Frihat*, *McDonald, Persson*, and *Weiler*. The issues are virtually identical. Equifax Inc. is not a consumer reporting agency and, therefore, is not subject to the FCRA and cannot be held liable under the FCRA. There is no reason for this Court to deviate from this strong and unbroken line of authority.

## II.     Ms. Frazier's FAC Fails to Plead Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g.

Ms. Frazier's FAC is also subject to dismissal under Rule 12(b)(6) against both Equifax Inc. and EIS because it fails to state facts sufficient to support a claim for relief under the FCRA. Ms. Frazier alleges that "Equifax  and [EIS] repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1)." (*See* Doc. 15 ¶ 58). Section 1681g(a)(1) of the FCRA states that, upon request, a consumer reporting agency shall disclose "[a]ll information in the consumer's file at the time of the request, except that – (A) if the consumer . . . requests that that the first five digits of the social security number [be truncated, the consumer reporting agency shall do so], and (B) nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. § 1681g(a)(1). To prevail on a claim based on § 1681g(a)(1), then, a plaintiff must adequately plead that the consumer reporting agency failed to provide the consumer with the consumer file. Here, Ms. Frazier merely recites in conclusory fashion that she did not receive a full consumer file disclosure at the same time admitting Equifax[1] timely responded and produced a "credit report." (*See* Doc. 15 ¶ 28). Ms. Frazier's averments are insufficient.

### A.     "Consumer file" is defined as the information contained in a consumer's credit report/disclosure.

The Federal Trade Commission ("FTC")[2] interpreted the term "file" in 1681g to be limited to material included in a consumer report that would be sent to a third party. See 40 Years

---

[1] As set forth in Argument section I, Equifax Inc. is not a CRA. EIS is a CRA, and it is the entity that responded to Ms. Frazier's two written requests. (See Exhibit C, Doc. 1-4 at 1).

[2] The interpretation and enforcement of the FCRA transferred from the FTC to Consumer Financial Protection Bureau ("CFPB") after passage of the Consumer Financial Protection Act of

Commentary, p. 71. "[A]ncillary records" such as "a CRA's audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, are not included in the term 'information in the consumer's file.'" *Id.* The Seventh Circuit in *Gillespie v. Trans Union Corp.* held that "file" meant information contained in a consumer report produced by the CRA. *See* 482 F.3d 907, 908-10 (7th Cir. 2007). *Gillespie* cites the FTC's commentary on §1681g(a)(1) regarding the limited scope of the term "file": "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id.* at 909 (quoting 16 C.F.R. pt. 600, app. § 603). "Congress, it seems, chose to limit the right to contest information to material *actually contained in consumer reports*. And of course it was free to draw the line as it did." *Gillespie*, 482 F.3d at 910 (emphasis added). Ms. Frazier alleges "Defendants have far more information relating to Plaintiff in their files and databases including archived information." (Doc. 15 ¶ 37). Ms. Frazier offers no factual enhancements to support her speculative conclusory statement. Nonetheless, to the extent such archived information exists, it is not part of the file to be produced under §1681g as interpreted by the FTC and courts.

**B.**     **Plaintiff admits she received a copy of her credit report/disclosure from Equifax.**

Ms. Frazier misunderstands how a "consumer report" is different from a consumer disclosure or credit file. *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004); *Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708, at *7 (S.D.

---

2010. In preparation for the transition, in July 2011, the FTC published "40 Years of Experience with the Fair Credit Reporting Act – An FTC Staff Report with Summary of Interpretations" ("40 Years Commentary") (available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf). The CFPB has not issued any contrary interpretation and has cited the 40 Years Commentary in amicus briefs on other topics. *See Moran v. The Screening Pros, LLC*, 9th Cir. Cause No. 12-57246 10/4/13, Dkt. 22.

Ala. Feb. 17, 2010). "Consumer reports" are generated by a CRA and delivered to a third party for use in deciding whether the consumer is eligible for credit or for other purposes. *Pettway*, at \*7 (citing 15§ 1681a(d)). In contrast, a "consumer disclosure" or "consumer file" is a CRA's file that is provided to the consumer, not to third parties, that contains information about the consumer recorded and retained by the CRA. *Id.* (citations omitted). In other words, there cannot be a consumer report without delivery to a third party.

Ms. Frazier's sole allegation against Equifax Inc. and EIS is that she did not receive her "full consumer file disclosure" as requested. (*See* Doc. 15 ¶¶ 19-20, 25, 28). Ms. Frazier states that she sent "Equifax" a request for her full consumer file disclosure, and in response received a copy of her "credit report." (*Id.* at ¶¶ 25, 28). She does not dispute that she received this document upon her request, as required by § 1681g. As defined by case law discussed above, a credit report goes to a third party. Because Ms. Frazier, the consumer, was the recipient, what she received was exactly what she requested – a full consumer file disclosure.

Thus, by Ms. Frazier's own admission, Equifax Inc. and EIS complied with § 1681g(a)(1) and relevant federal case precedent by providing her consumer disclosure to her. Accordingly, Ms. Frazier has failed to allege sufficient facts to support a cause of action against Equifax Inc. and EIS under the FCRA, and the Court should grant judgment on the pleadings and dismiss her claim under Rule 12(b)(6).

**C.   Ms. Frazier provides no factual basis for her assertion that the "credit report" she received was not her "full consumer file disclosure."**

Notably absent from Ms. Frazier's FAC is any factual enhancement that specific information that should have been in the disclosure was missing. Instead, she offers speculative conclusions with no factual basis that information has been excluded from her consumer file. She

acknowledges the speculative nature of her statements by stating that "one can only surmise." (*See* Doc. 15 ¶ 43). She assumes that such information includes the following categories:

- "additional information that is provided to prospective creditors, insurers or employers who request information on Plaintiff that she has never seen" (*id.* ¶ 34);

- "negative codes among other things that are provided to prospective creditors, insurers or employers" (*id.* ¶ 35); and

- "far more information relating to Plaintiff in [Defendants'] files and databases including archived information." *(id.* ¶ 37).

Specifically, she alleges "[u]pon information and belief" that these types of information are missing from her disclosure. (*Id.* ¶¶ 34, 35, and 37). Since the decision of *Twombly* and *Iqbal*, various district courts have stated that a plaintiff may plead facts "upon information and belief" in two circumstances: (1) where the facts are peculiarly within the possession and control of the defendant, or (2) where the belief is based on factual information that makes the inference of culpability plausible. *See, e.g.*, *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 768 (D. Md. 2015); *Davidson v. Sarnova, Inc.*, No. CV JKB-17-1067, 2017 WL 5564654, at *4 (D. Md. Nov. 20, 2017); *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014). A plaintiff may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged "upon information and belief." *Doe*, 123 F. Supp. 3d at 768.

Here, the FAC contains mere conclusory statements and provides no factual basis for the assertion that any specific information has been withheld from the document she admits receiving. Ms. Frazier's FAC should be dismissed because she has alleged no facts sufficient to support any recognizable cause of action under § 1681g.

## **CONCLUSION**

Defendants Equifax Inc. and EIS respectfully request that this Honorable Court dismiss Ms. Frazier's FAC pursuant to Rule 12(b)(6) and for such other relief as the Court deems necessary.

Respectfully submitted this 5th day of April, 2018.

*/s/ Nathan D. Adler*
Nathan Daniel Adler, Esq.
Bar No: 22645
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202-3201
(410) 332-8516
(410) 332-8517 – Fax
nda@nqgrg.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of April, 2018, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system and via U.S. Mail to:

Joahn Barron Frazier
P.O. Box 25
Hagerstown, MD 21741

Jon G. Heintz
Jones Day
51 Louisiana Ave
Washington, DC 20001

Robert J. Schuckit
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077

*/s/ Nathan D. Adler*
Nathan Daniel Adler