# UNITED STATES OF AMERICA
# CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING
File No. 2017-CFPB-0001

| In the Matter of:<br><br>**Equifax Inc. and Equifax Consumer Services LLC** | **CONSENT ORDER** |
|---|---|

The Consumer Financial Protection Bureau (Bureau) has reviewed the marketing practices of Equifax Inc. and Equifax Consumer Services LLC (collectively, Equifax or Respondents, as defined below) and has identified the following law violations: (1) Equifax deceptively marketed credit scores to consumers by falsely representing, in violation of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, that the scores it marketed and sold to consumers were the same scores lenders typically use to determine creditworthiness; (2) Equifax deceptively marketed credit scores and credit-related products to consumers by falsely representing, in violation of the CFPA, that the scores and products were "free," when, in reality, when a consumer signed up for a "free" trial, she was automatically enrolled in a subscription program for which she was charged a recurring monthly fee unless she cancelled; and (3) Equifax placed advertisements for its products on web pages that consumers accessed through AnnualCreditReport.com before they obtained their free annual file disclosures, in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x, as

EXHIBIT B

implemented by Regulation V, 12 C.F.R. § 1022.136(g)(1). Under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order (Consent Order).

## I

## Jurisdiction

1. The Bureau has jurisdiction over this matter under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563 and 5565, and section 621 of the FCRA, 15 U.S.C. § 1681s.

## II

## Stipulation

2. Respondents have executed a "Stipulation and Consent to the Issuance of a Consent Order," dated December 22, 2016 (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondents have consented to the issuance of this Consent Order by the Bureau under sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563 and 5565, without admitting or denying any of the findings of fact or conclusions of law, except that Respondents admit the facts necessary to establish the Bureau's jurisdiction over Respondents and the subject matter of this action.

## III

## Definitions

3. The following definitions apply to this Consent Order:

   a. "Affected Consumers" includes the following classes of consumers who were enrolled in a Negative Option free trial offer of an Equifax Credit-Related Product from July 21, 2011 through March 14, 2014:

i. Consumers who enrolled in response to an advertisement run by Equifax and cancelled from the Equifax Credit-Related Product within two billing periods (*i.e.*, before the third bill) without receiving a refund of fees paid; and

ii. Consumers who enrolled in response to an advertisement run by an Equifax Affiliate Marketer and cancelled from the Equifax Credit-Related Product within four billing periods (*i.e.*, before the fifth bill) without receiving a refund of fees paid.

b. "Affiliate Marketer" means third-party entities that have marketed or advertised Equifax Credit-Related Products directly to consumers on Equifax's behalf, as identified in the Compliance Plan.

c. "Assistant Deputy for Consumer Reporting" means the Assistant Deputy for Consumer Reporting for the Office of Supervision for the Consumer Financial Protection Bureau, or his/her delegate.

d. "Board" means Equifax Inc.'s duly-elected and acting Board of Directors.

e. "Clear and conspicuous" or "clearly and conspicuously" means "clearly and prominently" such that the required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, regardless of the method of communication, including in all the following ways:

i. In textual communications (*e.g.*, printed publications or words displayed on the screen of an electronic device), the disclosure must be of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend, in print that contrasts with the background on which it appears;

ii. In communications disseminated orally or through audible means (*e.g.*, radio or streaming audio), the disclosure must be delivered in a volume, speed, and cadence sufficient for an ordinary consumer to hear and comprehend it;

iii. In communications disseminated through video means (*e.g.*, television or streaming video), the disclosure must be in writing in a form consistent with subsection (i), and must appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend it;

iv. In communications made through interactive media such as the Internet, online services, and software, the disclosure must be unavoidable and presented in a form consistent with subsection (i); a disclosure is not clear and conspicuous if a consumer must take any action, such as clicking on a hyperlink or hovering over an icon, to see it;

v. In communications that contain both audio and visual portions, the disclosure must be presented simultaneously in both the audio and visual portions of the communication;

vi. In all instances, the disclosure must be presented before the consumer incurs any financial obligation, and use diction and syntax that is understandable to a reasonable consumer, in each language in which the representation that requires the disclosure appears; and

    vii.    The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication with the consumer.

f. "Consumer Complaint" means any expression of dissatisfaction by a consumer.

g. "Effective Date" means the date on which the Consent Order is issued.

h. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his/her delegate.

i. "Equifax Credit-Related Product" means any product or service that includes an Equifax Credit Score that Respondents offer or have offered for sale directly to consumers, including through Equifax's Affiliate Marketers.

j. "Nationwide Consumer Reporting Agency" refers to a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as that term is defined in section 603(p) of the FCRA, 15 U.S.C. § 1681a(p).

k. "Negative Option" means a category of commercial transactions in which a seller interprets a customer's failure to take an affirmative action, either to reject an offer or cancel an agreement, as assent or continuing assent to be charged for goods or services.

l. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Respondents based on substantially the same facts as described in Section IV of this Consent Order.

m. "Relevant Period" includes the period from July 21, 2011 through March 14, 2014.

n. "Respondents" means Equifax Inc. and Equifax Consumer Services LLC, and their successors and assigns.

## IV

## Bureau Findings and Conclusions

The Bureau finds the following:

4. Equifax Inc. is headquartered in Atlanta, Georgia, and compiles and maintains financial, consumer, and commercial data across the nation and worldwide. Equifax Inc. is the parent company of Equifax Consumer Services LLC.

5. Equifax Inc. is a "covered person" as that term is defined by the CFPA, 12 U.S.C. § 5481(6).

6. Respondents market and sell credit reports to consumers and to commercial users including, but not limited to, lenders, insurance companies, and potential employers.

7. During the Relevant Period, Equifax marketed and sold Equifax Credit-Related Products to consumers. Consumers could purchase these products from Equifax in a one-time transaction or through a subscription where the consumer paid a recurring fee, usually monthly, to have continuous access to the product for as long as the consumer was enrolled in the subscription.

8. During the Relevant Period, Equifax marketed and sold Equifax Credit-Related Products to consumers through a variety of online channels, including banner and display advertisements that appeared on popular websites, direct emails to